LB9sROBp

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,

 4              v.                        21 CR 201 (JMF)

 5    RODNEY ROBINSON,

 6                 Defendant.

 7    ------------------------------x

 8                                        New York, N.Y.
                                          November 9, 2021
 9                                        2:15 p.m.

10
      Before:
11
                        HON. JESSE M. FURMAN,
12
                                          District Judge
13

14                           APPEARANCES

15    DAMIAN WILLIAMS
           United States Attorney for the
16         Southern District of New York
      BY:  ASHLEY C. NICOLAS
17         Assistant United States Attorney

18    FEDERAL DEFENDERS OF NEW YORK
           Attorneys for Defendant
19    BY:  ANDREW J. DALACK

20

21

22

23

24

25
```

LB9sROBp

1        (Case called)

2        THE DEPUTY CLERK:  Counsel, please state your name for

3    the record.

4        MS. NICOLAS:  Good afternoon, your Honor.  AUSA Ashley

5    Nicolas for the government.

6        THE COURT:  Good afternoon.

7        MR. DALACK:  Good afternoon, your Honor.  Andrew

8    Dalack from the Federal Defenders of New York standing in for

9    Mr. Mark Gombiner on behalf of Rodney Robinson.

10        THE COURT:  All right.  Good afternoon to you as well

11    and thank you for standing in.  Let me start by apologizing to

12    everybody for keeping you waiting.  I had a court meeting and

13    it unfortunately ran a little long and I couldn't walk out.  So

14    I apologize for that .

15        MR. DALACK:  While we're apologizing, Mark wanted me

16    to extend his apologies for not communicating his conflict with

17    the court sooner.

18        THE COURT:  All right.  I appreciate that.

19        I love Mr. Gombiner, but it's a little bit of a

20    pattern, so it gets a little tiring.  Now, you can let him know

21    that, but I appreciate the apology.

22        MR. DALACK:  Yes, your Honor.

23        THE COURT:  All right.  With that, my understanding is

24    that, Mr. Robinson, your intention is to change your plea and

25    plead guilty to Counts One and Four of the indictment, is that

LB9sROBp

1    correct?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  If you could, there should be a microphone

4    on your side of the table.  If you can pull it close to you,

5    please.  Make sure you speak directly into it.  With the masks

6    in particular, that just makes it a lot easier to hear you.

7              Before I accept your guilty plea, I need to ask you

8    certain questions to establish that you are pleading guilty

9    because you are, in fact, guilty and not for some other reason,

10   to ensure that you understand the rights that you would be

11   giving up by pleading guilty, and to ensure that you understand

12   the potential consequences of a guilty plea.

13             If there are any questions you don't understand,

14   please let me know.  It is critical that you understand each

15   question before you answer it.  If at any point you would like

16   to speak with Mr. Dalack for any reason, please let me know,

17   I'll give you however much time you wish to speak with him.

18             Do you understand that?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Would you please rise so that my deputy

21   Ms. Smallman can administer the oath to you.

22             (Defendant sworn)

23             You're now under oath, which means that if you answer

24   any of my questions falsely, you may be subject to prosecution

25   for the separate crime of perjury.

LB9sROBp

1              Do you understand that?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  What is your full name?

4              THE DEFENDANT:  Rodney Dwayne Robinson.

5              THE COURT:  How old are you?

6              THE DEFENDANT:  55.

7              THE COURT:  How far did go in school?

8              THE DEFENDANT:  Um, near graduation, college.

9              THE COURT:  Was that here in the United States or

10    elsewhere?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And have you ever been treated or

13    hospitalized for any type of mental illness?

14             THE DEFENDANT:  No, sir.

15             THE COURT:  Are you now or have you recently been

16    under the care of a doctor or a mental health professional?

17             THE DEFENDANT:  No, sir.

18             THE COURT:  Have you been treated or hospitalized for

19    any type of addiction, including drug or alcohol addiction?

20             THE DEFENDANT:  No.  No, sir.

21             THE COURT:  In the last 48 hours, have you taken any

22    medicine, pills, drugs or had any alcohol?

23             THE DEFENDANT:  No, sir.

24             THE COURT:  Is your mind clear today?

25             THE DEFENDANT:  Yes, sir.

LB9sROBp

1      THE COURT:  Do you understand what's happening here
2  today?
3      THE DEFENDANT:  Yes, sir, I do.
4      THE COURT:  All right.  Mr. Dalack, am I correct that
5  you and/or Mr. Gombiner have spoken to Mr. Robinson about this
6  matter?
7      MR. DALACK:  Yes, your Honor.  I have personally
8  spoken with him.  I've met with him last night in preparation
9  for today.
10      THE COURT:  All right.  In your judgment, does he
11  understand the rights that he would be giving up by pleading
12  guilty?
13      MR. DALACK:  Yes, your Honor.
14      THE COURT:  In your judgment, is he capable of
15  understanding the nature of these proceedings?
16      MR. DALACK:  Yes.
17      THE COURT:  Does either counsel have any doubt as to
18  Mr. Robinson's competence to plead guilty at this time?
19      MS. NICOLAS:  No, your Honor.
20      MR. DALACK:  No, your Honor.
21      THE COURT:  On the basis of Mr. Robinson's responses
22  to my questions, my observations of his demeanor here in court,
23  and the representations of counsel, I find that he is fully
24  competent to enter an informed plea of guilty at this time.
25      Mr. Robinson, have you received a copy of the

LB9sROBp

1 || indictment 21 CR 201 containing the charges to which you intend

2 || to plead guilty?

3 ||         THE DEFENDANT:  Yes, sir, I have.

4 ||         THE COURT:  Have you read the indictment?

5 ||         THE DEFENDANT:  Yes, sir, I have.

6 ||         THE COURT:  Have you had enough time to talk to your

7 || lawyers about the charges to which you intend to plead guilty

8 || and any possible defenses to those charges?

9 ||         THE DEFENDANT:  Yes, sir.

10 ||         THE COURT:  Have they explained to you the

11 || consequences of entering a guilty plea?

12 ||         THE DEFENDANT:  Yes, he has.

13 ||         THE COURT:  And are you satisfied with your lawyer's

14 || representation of you?

15 ||         THE DEFENDANT:  I am.

16 ||         THE COURT:  All right.  Now, let me explain to you

17 || certain rights that you would be giving up by pleading guilty.

18 || I want you to listen carefully, and if there is anything you

19 || don't understand, again, please let me know and I'll explain it

20 || to you more fully.

21 ||         Under the Constitution and laws of the United States,

22 || you have the right to plead not guilty to the charges in the

23 || indictment.

24 ||         Do you understand that?

25 ||         THE DEFENDANT:  Yes, sir.

LB9sROBp

1          THE COURT:  If you did plead not guilty, you would be

2    entitled to a speedy and public trial by a jury on those

3    charges.

4          Do you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Sorry.  Can you say it again?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Great.  Thank you.

9          At that trial, you would be presumed to be innocent

10    and you would not have to prove that you were innocent.

11    Instead, the government would be required to prove your guilt

12    by competent evidence beyond a reasonable doubt before the jury

13    could find you guilty.

14          Do you understand that?

15          MR. DALACK:  One moment, your Honor.

16          THE COURT:  There may be tissues on the table.

17          MR. DALACK:  This is an empty box.

18          THE COURT:  Let's try to fix that problem.

19          Give us a moment.  We'll get some more.

20          MR. DALACK:  Thanks.

21          THE DEFENDANT:  Thank you.

22          Yes, sir.

23          THE COURT:  Just take your time.  Tell me when you're

24    ready to go, and then we'll proceed from there.

25          You all set?

LB9sROBp

1          THE DEFENDANT:  Yes.

2          THE COURT:  OK.  Just let me know if you need to take

3     a break or pause.

4          As I was saying, in order to find you guilty, a jury

5     of 12 people would have to agree unanimously that you were

6     guilty.

7          Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  At that trial and at every stage of your

10    case, you would be entitled to be represented by a lawyer, and

11    if you could not afford a lawyer, one would be appointed at

12    public expense free of cost to represent you.

13         Do you understand that?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  During a trial, the witnesses for the

16    government would have to come to court and testify in your

17    presence and your lawyer would have an opportunity to

18    cross-examine those witnesses and object to any evidence

19    offered against you.  You would also have an opportunity to

20    introduce evidence on your own behalf, and you would have the

21    right to have subpoenas issued or other process used to compel

22    witnesses to come to court and testify on your behalf.

23         Do you understand all that?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  At a trial you would also have the right

LB9sROBp

to testify if you chose to do so, but you would have the right

not to testify as well.  And if you chose not to testify, then

no one, including the jury, could draw any inference or

suggestion of guilt from the fact that you did not testify.

                Do you understand that?

                THE DEFENDANT:  Yes, sir.

                THE COURT:  Before trial you would have an

opportunity, if you have not waived it, to seek the exclusion

or suppression of any evidence that the government would use

against you at a trial.

                Do you understand that?

                THE DEFENDANT:  Yes, sir.

                THE COURT:  If you were convicted at a trial, you

would have the right to appeal that verdict and any pretrial

rulings I made in your case.

                Do you understand that?

                THE DEFENDANT:  Yes, sir.

                THE COURT:  If you plead guilty, you will also have to

give up your right not to incriminate yourself because I may

ask you questions about what you did in order to satisfy myself

that you are guilty as charged, and you would have to admit and

acknowledge your guilt.

                Do you understand that?

                THE DEFENDANT:  Yes, sir.

                THE COURT:  If you plead guilty and if I accept your

LB9sROBp

1    guilty plea, you will give up your right to a trial and the

2    other rights that we have discussed other than your right to a

3    lawyer, which you keep whether or not you plead guilty.  But

4    there will be no trial, and I will enter a judgment of guilty

5    and sentence you on the basis of your plea after I have

6    received a presentence report prepared by the United States

7    Probation Department and any submissions that I get from the

8    lawyers.  There will be no appeal with respect to whether you

9    did or did not commit the offenses to which you're pleading

10   guilty or with respect to whether the government could use the

11   evidence that it has against you.

12              Do you understand all that?

13              THE DEFENDANT:  Yes, sir, I do.

14              THE COURT:  Now, even now as you are entering this

15   plea, you have a right to change your mind and plead not guilty

16   and go to trial on the charges in the indictment.

17              Do you understand that?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  Do you understand each and every one of

20   the rights I have just explained to you?

21              THE DEFENDANT:  Yes, sir, I do.

22              THE COURT:  And are you willing to give up your right

23   to a trial and the other rights that we have discussed?

24              THE DEFENDANT:  Yes, sir.

25              THE COURT:  Do you understand that you are charged in

LB9sROBp

Count One of the indictment with forgery and false use of a

passport, in violation of Title 18, United States Code,

Sections 1543 and 2, and in Count Four, with aggravated

identity theft in violation of 18 U.S. Code, Sections

1028(A)(a)(1) and subsection (B), as well as Section 2?

Do you understand that those are the charges?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Ms. Nicolas, would you please

state the elements each of those offenses?

MS. NICOLAS:  Yes, your Honor.

Count One, which is Title 18, United States Code,

1543, charges the defendant with forgery and false use of a

passport, which has two elements.

First, that the defendant falsely made, forged,

counterfeited, mutilated, or altered a passport or instrument

purporting to be a passport;

Second, that he did so with the intent that the

document be used.

Count Four of the indictment charges the defendant

with aggravated identity theft, which has four elements.

First, that the defendant knowingly transferred,

possessed or used;

Second, without lawful authority;

Third, the means of identification of another person;

and

LB9sROBp

1           Fourth, that that was done during and in relation to a

2    felony enumerated in Section 1028(A)(c) or Section 2332

3    (B)(g)(5)(B), in this case in particular, it's 1028(A)(c)(7).

4           THE COURT:  All right.  Do you understand,

5    Mr. Robinson, if you were to go to trial, the government would

6    have to prove each of those elements beyond a reasonable doubt

7    before a jury could find you guilty?

8           Do you understand that?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  And in addition, the jury would have to

11   find but only by a preponderance of the evidence that venue was

12   proper in this district, in essence, that something in

13   connection with the crimes occurred in this district.

14          Do you understand that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  All right.  Let me tell you now about the

17   maximum possible sentences that could apply to these crimes.

18   By maximum, I mean the most that could possibly be imposed on

19   you.  And you have to understand that doesn't necessarily mean

20   that it is the sentence you will receive, but you do have to

21   understand that you could receive a combination of punishments

22   up to the statutory maximum.

23          Do you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Let me tell you first about the possible

LB9sROBp

1  restrictions on your liberty.

2          The maximum term of imprisonment for Count One is ten

3  years in person, and for Count Two, Count Two is a mandatory

4  two-year term of imprisonment.  In each case, that could be

5  followed by supervised release.  In the case of Count One, a

6  maximum of three years of supervised release.  In the case of

7  Count Four, one year of supervised release.  I'm not sure if I

8  said Count Four or Count Two before, but Count Four is what I

9  was referring to as the second count.

10          Supervised release means that you would be subject to

11  supervision by the probation department.  There would be rules

12  of supervised release that you would be required to follow, and

13  if you violated any of those rules, you could be returned to

14  prison to serve additional time without a jury trial and

15  without credit for either your time underlying sentence or time

16  spent on post-release supervision.

17          Do you understand all of that?

18          THE DEFENDANT:  Yes, sir, I do.

19          THE COURT:  You should understand that there is no

20  parole in the federal system, which means that if you were

21  sentenced to prison, you would not be released early on parole.

22  There is a limited opportunity to earn credit for good

23  behavior, but if you were sentenced to prison, you would have

24  to serve at least 85 percent of the time to which you were

25  sentenced.

LB9sROBp

1          Do you understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  In addition to these restrictions on your

4     liberty, the maximum possible punishment also includes certain

5     financial penalties.  In the case of each count, I could impose

6     a fine.  The maximum allowable fine is the greatest of $250,000

7     or twice the gross pecuniary or financial gain derived from the

8     offense or twice the gross pecuniary or financial loss derived

9     from the offense.

10          Second, I could order restitution to any person or

11     entity injured as a result of your criminal conduct.

12          Third, I could order you to forfeit any and all

13     property derived from the offense or used to facilitate the

14     offense.

15          And finally, I must order a mandatory special

16     assessment of $100 for each count.

17          Do you understand that those are the maximum possible

18     penalties?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  In addition, you should understand --

21     well, let me start by saying that, do you understand that

22     taking the two counts together, the maximum possible term of

23     imprisonment that you could conceivably be sentenced to prison

24     for is up to 12 years?

25          Do you understand that?

LB9sROBp

1    THE DEFENDANT:  Yes, sir.

2    THE COURT:  All right.  Do you understand that Count

3  Four also carries a mandatory minimum term of imprisonment,

4  namely two years, which must be imposed to run consecutive to

5  any term of imprisonment that you receive in connection with

6  Count One?  That is, absent a motion by the government, I would

7  have no choice but to sentence you to at least two years'

8  imprisonment to run consecutive to any other sentence on Count

9  Four.

10    Do you understand that?

11    THE DEFENDANT:  Yes, sir, I do.

12    THE COURT:  Are you a citizen of the United States,

13  Mr. Robinson?

14    THE DEFENDANT:  Yes.

15    THE COURT:  Do you understand that if you were not a

16  citizen of the United States, do you understand that as a

17  result of your guilty plea, there may be adverse effects on

18  your immigration status?  That is, you could be detained by

19  immigration authorities following the completion of your

20  criminal sentence, you could be removed from the United States,

21  you could be denied citizenship to the United States, or you

22  could be denied admission into the United States in the future.

23    Do you understand that if you were not a citizen, that

24  those are among the potential consequences of a guilty plea?

25    THE DEFENDANT:  Yes, sir, I do.

LB9sROBp

1          THE COURT:  All right.  Mr. Dalack, I guess I was a

2     little surprised, given the nature of the charge here, that the

3     answer to that question was yes.

4          Mr. Robinson is a citizen of the United States?

5          MR. DALACK:  He is a citizen, your Honor, yes.

6          THE COURT:  All right.  Mr. Robinson, were you a

7     naturalized citizen or natural born citizen.

8          THE DEFENDANT:  Natural born citizen, sir.

9          THE COURT:  OK.  Do you understand that as a result of

10    your guilty plea, you may lose certain valuable civil rights,

11    to the extent that you have them or could otherwise obtain them

12    now, such as the right to vote, right to hold public office,

13    right to serve on a jury, and the right to possess any kind of

14    firearm?

15         Do you understand that?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Are you serving any other sentence, either

18    state or federal, or being prosecuted in any other court at

19    this time?

20         THE DEFENDANT:  No, sir.

21         THE COURT:  Do you understand that if your lawyer or

22    anyone else has attempted to predict what your sentence will

23    be, that their predictions could be wrong?

24         Do you understand that?

25         THE DEFENDANT:  Yes, sir, I do.

LB9sROBp

1        THE COURT:  It's important for you to understand that

2   no one, not your lawyer, not the lawyer for the government, not

3   probation department, no one could give you any assurance or

4   promise of what your sentence will be in this case, and that's

5   because your sentence will be determined by me and by me alone,

6   and I'm not going to do that today.  Instead, I will wait until

7   I receive the presentence report prepared by the United States

8   Probation Department.  I will do my own calculation of how the

9   sentencing guidelines apply to your case.  I'll consider any

10  possible departures from the guidelines range.  I will consider

11  any submissions I get from the lawyers.  And ultimately, I will

12  consider the factors that are relevant to sentencing under

13  Title 18, United States Code, Section 3553(a).  I'll do all of

14  that before determining and imposing an appropriate sentence.

15       Do you understand that?

16       THE DEFENDANT:  Yes, sir.

17       THE COURT:  And have you discussed that process, the

18  sentencing process with your lawyers?

19       THE DEFENDANT:  Yes, sir.

20       THE COURT:  Now, even if your sentence is different

21  from what your lawyers or anyone else has told you that it

22  might be, even if it is different from what you hope or expect

23  it to be, even if it is different from what may be in the plea

24  agreement we will discuss in one moment, you will still be

25  bound by your guilty plea and you will not be allowed to

LB9sROBp

1    withdraw your plea.

2              Do you understand that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  I understand there is a written plea

5    agreement that you and your lawyers have entered into with the

6    lawyers for the government, is that correct?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Now, I have an original letter plea

9    agreement here dated September 13, 2021, from Ms. Nicolas to

10   Mr. Gombiner.  I'll mark this as Court Exhibit 1 and provide it

11   to the government to retain into its possession after this

12   proceeding.

13             Looking at the last page, you appear to have signed

14   this dated today, November 9.  Is that your signature there on

15   the last page, Mr. Robinson?

16             THE DEFENDANT:  Yes, sir, it is.

17             THE COURT:  Before you signed the plea agreement, did

18   you read it?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Before you signed it, did you discuss it

21   with your lawyers?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Before you signed it, did they explain it

24   to you and answer any questions you may have had about the plea

25   agreement?

LB9sROBp

1          THE DEFENDANT:  Yes, sir, they did.

2          THE COURT:  And before you signed the plea agreement,

3    did you fully understand it?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Now, one of the features of your agreement

6    with the government is that you and the government have agreed

7    upon how the United States Sentencing Guidelines apply to your

8    case.

9          Do you understand, is that correct?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Do you understand that, or you should

12   understand that that agreement is binding on you and it is

13   binding on the government, but it is not binding on me.  That

14   is to say, I have my own independent obligation to determine

15   the correct guidelines range.  I am not suggesting to you that

16   I come up with a different calculation, but I could.  And even

17   if the calculation that I arrived at was greater than the one

18   you agreed to, you would still be bound by your guilty plea and

19   you would not be allowed to withdraw your plea.

20         Do you understand that?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  In addition, in the plea agreement you

23   agreed to and do admit to the forfeiture allegation with

24   respect to Count One of the indictment, is that correct?

25         THE DEFENDANT:  Yes, sir.

LB9sROBp

```
 1              THE COURT:  And do you understand that?

 2              THE DEFENDANT:  Yes, sir.

 3              THE COURT:  All right.  Now, another provision of this

 4    agreement that I want to bring to your attention is that you

 5    agree to waive or give up any right to challenge on appeal or

 6    otherwise a sentence if it is within or below the stipulated

 7    sentencing guidelines range of 30 to 36 months' imprisonment.

 8    That means that if I were to sentence you to 36 months in

 9    person or anything less than 36 months in prison, you would

10    have no right to appeal or otherwise challenge that sentence.

11              Do you understand that?

12              THE DEFENDANT:  Yes, sir, I do.

13              THE COURT:  Does this written agreement constitute

14    your complete and total understanding of the entire agreement

15    between you and the government?

16              THE DEFENDANT:  Yes, sir, it does.

17              THE COURT:  Has anything been left out of the written

18    plea agreement?

19              THE DEFENDANT:  That's for me -- no.

20              THE COURT:  Has anything been left out of the written

21    plea agreement?

22              THE DEFENDANT:  No, sir.

23              THE COURT:  All right.  Other than what is written in

24    the agreement, has anyone made any promise to you or offered

25    you anything to either plead guilty or sign the agreement?
```

LB9sROBp

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Has anyone forced you to or threatened you

3    to plead guilty or to sign the plea agreement?

4          THE DEFENDANT:  No.  No, sir.

5          THE COURT:  Has anyone made a promise to what your

6    sentence will be in this matter?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  All right.  Mr. Robinson, I would like you

9    now to tell me in your own words what you did that makes you

10   believe that you are guilty of the crimes charged in Counts One

11   and Four of the indictment.

12         I'll just ask you to speak slowly and clearly into the

13   microphone to make sure we can hear everything you say.

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Go ahead.

16         THE DEFENDANT:  I alter the personal identifying

17   information on a United States Passport and used it to gain

18   employment in the Southern District of New York.  The

19   information that I used belonged to another person.  I know

20   what I did was wrong, and I'm very sorry.

21         THE COURT:  All right.  Now, and when did that take

22   place?

23         THE DEFENDANT:  Um, January 2017.

24         THE COURT:  And when you say in the Southern District

25   of New York, can you specify, was that in Manhattan or the

LB9sROBp

1    Bronx?

2              THE DEFENDANT:  Manhattan.  Brooklyn, Manhattan, yes,

3    sir.

4              THE COURT:  All right.  And when you say another

5    person, was that other person a real person whose identity you

6    used?

7              THE DEFENDANT:  Yes.

8              THE COURT:  When you did that, did you understand and

9    know that you were not authorized to use that person's

10   identity?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Did you understand and know that what you

13   were doing was wrong and in violation of the law?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  And did you purposely, that is

16   intentionally and willfully, forge or alter the passport with

17   that person's identity?

18             THE DEFENDANT:  Yes.  Yes, sir.

19             THE COURT:  All right.  Mr. Dalack, are you aware of

20   any valid defense that would prevail at a trial or know of any

21   reason that Mr. Robinson should not be permitted to plead

22   guilty?

23             MR. DALACK:  No, your Honor.

24             THE COURT:  Ms. Nicolas, are there any additional

25   questions you would like me to ask Mr. Robinson?

LB9sROBp

1          MS. NICOLAS:  No, your Honor.

2          THE COURT:  Would you please summarize briefly what

3    the government's evidence would be if Mr. Robinson were to go

4    to trial and what that evidence would show?

5          MS. NICOLAS:  Yes, your Honor.

6          The government would present documents submitted to

7    the defendant's former employers, including the document that

8    purported to be the passport, as well as I-9s and W-4s that

9    included stolen Social Securities and identification

10   information.  We would also submit the other documents that

11   were not government documents given to the employers, including

12   payroll information and the actual job applications themselves.

13   The government would also offer the testimony of those former

14   employers.  The government would offer bank records as well as

15   business registration documents that were used by the defendant

16   in the course of his falsified identity, as well as documents

17   seized during a search warrant executed at the defendant's home

18   and the photos taken during that search warrant.  The

19   government would also offer state department records that

20   include the passport records for the identity theft victim, as

21   well as Social Security  Administration records that include

22   records related to the identity theft victim.  The government

23   would also call state department witnesses who would testify as

24   to the passport application and issuance process.

25         THE COURT:  Thank you.

LB9sROBp

1          Do both counsel agree that there is a sufficient

2     factual basis for a guilty plea to Counts One and Four?

3          MS. NICOLAS:  Yes, your Honor.

4          MR. DALACK:  Yes, Judge.

5          THE COURT:  And, Mr. Dalack, just to confirm, is there

6     any dispute that Count One qualifies as a predicate offense for

7     purposes of Count Four?

8          MR. DALACK:  I'm sorry.  Say it again, your Honor.

9          THE COURT:  Is there any dispute that Count One

10    qualifies as a predicate offense for purposes of Count Four?

11         MR. DALACK:  No, your Honor.  No dispute.

12         THE COURT:  All right.  Does either counsel know of

13    any reason that I should not accept Mr. Robinson's plea of

14    guilty?

15         MS. NICOLAS:  No, your Honor.

16         MR. DALACK:  No, your Honor.

17         THE COURT:  Mr. Robinson, because you acknowledge that

18    you are, in fact, guilty as charged in the indictment, because

19    I am satisfied that you know of your rights, including your

20    right to go to trial, and that you are aware of the

21    consequences of your guilty plea, including the sentence that

22    could be imposed upon you, and because I find that you are

23    knowingly and voluntarily pleading guilty, I accept your guilty

24    plea and enter a judgment of guilty on Counts One and Four.

25         The probation department will want to interview you in

LB9sROBp

1    connection with the presentence report that it will prepare.

2    If you choose to speak with the probation department, I would

3    urge you to ensure that anything you say is truthful and

4    accurate.  Among other things, that report is important to me

5    in deciding what sentence to impose upon you.  And before

6    sentencing, you and your lawyers will have an opportunity to

7    review the report.  I would urge you to review it with care,

8    and if you find any mistakes in the report or anything that you

9    wish to bring to my attention in connection with sentencing,

10   that you share that with your lawyers so that they can share it

11   with me in turn.

12              Do you understand that?

13              THE DEFENDANT:  Yes, sir.

14              THE COURT:  Mr. Dalack, do you or Mr. Gombiner wish to

15   be present in connection with any interview?

16              MR. DALACK:  Yes, your Honor.

17              THE COURT:  I'll order that no interview take place

18   unless counsel is present.

19              I'll set sentencing for February 17, 2022, at 3:15 in

20   the afternoon.

21              I direct --

22              MR. DALACK:  I'm sorry, your Honor.  February 17?

23              THE COURT:  February 17, yes, at 3:15 p.m.

24              I direct the government to provide the probation

25   department with its factual statement of the offense within

LB9sROBp

1   seven days.  Defense counsel must arrange for Mr. Robinson to

2   be interviewed by probation department within the next two

3   weeks.

4           In accordance with my individual rules and practices,

5   defense submissions with respect to sentencing are due two

6   weeks prior to sentencing, and the government's submission is

7   due one week prior to sentencing.

8           Ms. Nicolas, any objection to the current bail

9   conditions being continued --

10          MS. NICOLAS:  No.

11          THE COURT:  -- through the date of sentencing?

12          All right.  Mr. Robinson, let me stress two things to

13  you, therefore.  Number one, I will continue your release

14  status.  That is to say, the conditions on which you've been

15  released to date will continue through the date of your

16  sentencing.  It is critical that you abide by all of those

17  conditions, and if you violate the terms of your release,

18  number one, it could have an effect on your release status

19  pending sentencing.  Number two, it could very well have a big

20  effect on the sentence that you receive at the time of

21  sentencing.  So that's very important.

22          Second, you must be here on the date and time that I

23  set.  And, again, February 17, 2022, at 3:15 in the afternoon.

24  You should stay in touch with your lawyers to ensure that if

25  the time or location changes, that you know where and when you

LB9sROBp

```
 1    need to be.  If you are not here on the date and time ordered,
 2    then you may be subject to punishment above and beyond whatever
 3    punishment you receive in connection with your plea today.
 4              Do you understand all of that?
 5              THE DEFENDANT:  Yes, sir, I do.
 6              THE COURT:  All right.  Ms. Nicolas, anything else?
 7              MS. NICOLAS:  Nothing further, your Honor.
 8              THE COURT:  Mr. Dalack?
 9              MR. DALACK:  Nor from the defense, your Honor.
10              Just wanted make sure I didn't miss anything with
11    respect to the court's colloquy about his citizenship status.
12    I didn't appreciate the issue that was at hand with respect to
13    his answers.  I wanted to make sure the court doesn't have any
14    lingering concerns.
15              THE COURT:  I think he indicated he was a natural born
16    U.S. citizen, correct?
17              MR. DALACK:  Correct.
18              THE COURT:  I think I now have a better sense of
19    things, although I expect to be further educated in the
20    sentencing submissions.  But needless to say, most of the
21    people who plead to the crime that Mr. Robinson pleaded to are
22    not U.S. citizens.
23              MR. DALACK:  Understood.
24              THE COURT:  And I thought if there was any securing of
25    U.S. citizenship based on false pretenses, he might need to be
```

LB9sROBp

1   specifically warned about the possibility that it could be

2   revoked.

3           MR. DALACK:  Understood.

4           THE COURT:  But that doesn't seem applicable here.

5           MR. DALACK:  Yes.

6           THE COURT:  That was where I was coming from.

7           MR. DALACK:  OK.  Thank you.

8           THE COURT:  All right.  Thank you, Mr. Dalack, for

9   stepping in, standing in on Mr. Gombiner's behalf.

10          MR. DALACK:  Absolutely.

11          THE COURT:  Everyone have a pleasant afternoon.

12          We're adjourned.

13          MR. DALACK:  Thank you, Judge.

14          (Adjourned)

15

16

17

18

19

20

21

22

23

24

25